# EXHIBIT 8



### FEDERAL BUREAU OF INVESTIGATION

*Freedom of Information Act newsletter for RIDS*

# RIDS FOIA BUZZ

**Volume 2, Issue 12**                    **July 2011**

## Inside this issue:

| | |
|---|---|
| Message from Section Chief | 1 |
| DRC Visit | 2 |
| FBI Suggested Investigative Techniques | 3 |
| Plane Crash into IRS Office, Austin, TX | 4 |
| U. S. Representative Daniel Rostenkowski | 5 |
| FOIA Mystery Requests | 6 |
| Breaking News on fbi.gov "The Vault" | 7 |

### Special Topics:

- *RIDS Q & A*
- *Classification*
- *Litigation*
- *On the Lighter Side!*
- *FOIA Processing Hot Topics*
- *Bolos*
- *Back Page Buzz*

## Message from Section Chief David M. Hardy
### Record/Information Dissemination Section (RIDS)

First in-first out, or FIFO, is one of the central elements in the management of our dynamic FOIA process. I want to explain why and how we use it beyond the fact that it is a requirement in FOIA. As to the why, our goal is to get information to the most requesters as soon as possible. As to the how,....

We measure the "first in" time based on the date of receipt of a request. After requests are made date ready and placed in the backlog, they are assigned to a Disclosure Unit using FIFO based on that receipt date. After that, the process resembles a boiling rapid. At any one time, we have about 1,000 requests that are being reviewed, comprising of 1.8 million pages. We have in our queues requests that range from one page to several hundred thousand pages. A large percentage of the requests require additional declassification, sensitivity, and/or subject matter expert reviews. Requests in litigation may be subject to court-ordered deadlines. In short, once assigned to a Disclosure Unit, the requests can't move at the same speed because there are so many other factors that enter into the equation.

There is one more variable that is very important. We can process about 10% of the pending pages (approximately 180,000 pages) in any given month. Take all of this, throw it together, and the result is a complex process.

The statue and regulations assist our goal of getting information to as many requesters as soon as possible by providing for separate queues-each with its own FIFO order-based on the size of the request. Each LAS should work on multiple requests using FIFO; making interim releases. **Continued on page four.**

## Department Review Committee (DRC) Visit by LAS

b6
b7C

The visit on June 21, 2011 to observe the DRC meeting was very insightful. This was a great opportunity to see how serious this committee takes our work and the professionalism reflected by [           ] and [           ] in the presentation and explanation. Though it does take us away from work for a day, it's important to see how our day to day work has an impact in the bigger scheme.

Several of the DRC members have been on board for years and their questions were to the point and they offered background information to the issue being discussed in reference to prior cases. One can see that we have really built a reputation on our presentations for justifying material which became apparent with an appeal. [     ] cited the categories within the auto-declass guide corresponding to the reasoning and referenced the GF-1 guide for information provided and relationship. The committee accepted that we have done our homework and are processing in light of the current Executive Order.

I thank both [     ] and [     ] for allowing me to be an observer, it was worthwhile.

Submitted by:
LAS [          ] CU-1

# EXHIBIT 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SETH ROSENFELD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 90-3576 |
| | ) |
| FEDERAL BUREAU OF | ) |
| INVESTIGATION and | ) |
| U.S. DEPARTMENT OF JUSTICE, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## **THIRD DECLARATION OF DAVID M. HARDY**

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), of the Federal Bureau of Investigation

("FBI"). RIDS, which was formerly located at FBI Headquarters in Washington, D.C., was

relocated to Winchester, Virginia. As discussed below, RIDS is the FBI division that responds to

requests made to the FBI under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. I

have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July

31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that

capacity, I had direct oversight of FOIA policy, procedures, appeals, and litigation for the Navy.

From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various

commands and routinely worked with FOIA matters. I am also an attorney who has been

licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 277

employees who staff a total of ten (10) units and two (2) field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to requests for access to FBI records and information pursuant to the FOIA, 5 U.S.C. § 552, as amended by OPEN Government Act of 2007, Pub. L. No. 110-175, 121 Stat. 2524; the Privacy Act of 1974, 5 U.S.C. § 552a; Executive Order 13526; Presidential, Attorney General and FBI policies and procedures; judicial decisions; and other Presidential and Congressional directives. The statements contained in this declaration are based upon my personal knowledge, upon information provided to me in my official capacity, and upon conclusions and determinations reached and made in accordance therewith.

(3)     Due to the nature of my official duties, I am familiar with the procedures followed by the FBI in responding to the requests for information from its files pursuant to the provisions of the FOIA and the Privacy Act, and I have supervised the work of the FBI employees, as described below, in locating and processing records pursuant to the Court's orders on the motion filed by plaintiff in 2006. This declaration, which supplements the statements made in my Second Declaration, summarizes the extensive actions taken by the FBI to comply with the orders issued by the Court on that motion. I have reviewed the following documents related to these three cases: the Stipulation and Order dated October 23, 1995; the Settlement Agreement dated January 4, 1996; my Second Declaration dated November 9, 2006; the Court's Orders dated February 6 and October 23, 2007; and the FBI's status reports to plaintiff dated August 6, 2007; March 14, 2008; February 4, 2010; March 5, 2010; April 5, 2010; May 5, 2010; June 5, 2010; July 6, 2010; and August 4, 2010.

2

## A. The FOIA Requests and the Prior Litigation

(4) These three cases (No. C-85-1709, C-85-2247, and C-90-3576), which were filed commencing in 1985 and were closed in 1996, have a long and complex history that spans over thirty years and includes documents that date back as far as the 1940s. Between 1981 and 1987, plaintiff made a series of FOIA requests for FBI records relating to several hundred subject matters. First, plaintiff's letter dated November 9, 1981 encompassed more than 225 subjects, including records relating to the Free Speech Movement, University of California officials, and related files detailing FBI investigations of political activities at the University of California, Berkeley, in the 1950s and 60s. On December 10, 1983, plaintiff submitted a FOIA request to the FBI's San Francisco office regarding records relating to a now defunct FBI counterintelligence program named "COINTELPRO." In response to these two requests, the FBI initially identified more than 350,000 potentially responsive pages. Plaintiff also submitted a FOIA request to the FBI on November 9, 1987, regarding 125 subjects, of which 91 were part of his 1981 request. The FBI identified approximately 216,600 pages as potentially to the 1987 request. The FBI also referred thousands of other documents responsive to these requests to numerous other agencies.

(5) Since 1981, the FBI devoted many years to processing and reprocessing plaintiff's requests, due to the number of subjects involved and the sheer volume of records requested, internal administrative challenges related to the age of the documents requested and the duration of the required tasks, including the need to conduct manual searches for certain subjects involving a person's date of birth before 1959 or an organization created before 1980, and changes to the record-keeping systems and the FBI personnel involved; and the need to

3

repeatedly respond to plaintiff's frequent and detailed questions.

(6)     Over the past thirty years, the FBI engaged in unprecedented efforts in responding

to plaintiff's FOIA requests:

- As of 1996, the FBI located, processed, and released a total of approximately 323,934 pages of responsive records to plaintiff, many of which were released prior to the initiation of litigation. The FBI subsequently processed or reprocessed and released tens of thousands of additional pages.

- As of 1993, the FBI expended almost $1 million to process plaintiff's requests, including at one point dedicating 126 FOIPA Section personnel to work full-time on his requests (See Third Declaration of J. Gary Boutwell, dated September 23, 1993, at ¶¶27-29). As discussed below, the FBI subsequently expended substantial additional amounts. For example, after the Court ruled on the plaintiff's 2006 motion, the FBI spent more than $1 million to locate and process abstracts and abstract cards stored at an off-site location controlled by the National Archives and Records Administration.

- The FBI took unprecedented steps to accommodate the processing of plaintiff's requests. For example, the FBI met face-to-face with plaintiff . for "oral Vaughn declarations" to offer explanations for the FBI's withholdings and redactions.

## B. The 1996 Settlement Agreement

(7)     I am aware that, after many years of litigation, the parties reached a settlement

agreement in December 1995, which was approved by the Court in January 1996, and these three

cases were then closed. The Settlement Agreement dated January 4, 1996 is directed to the

subjects identified in a Stipulation and Order dated October 23, 1995. The Stipulation lists 140

main subjects, of which 17 include sub-categories with further information that required over 175

additional searches, subsequent reviews of potentially responsive material, and re-reviews of

previously released material.

4

# EXHIBIT 10

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **GEORGE LARDNER,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No: 03-874 (HHK)** |
| | ) | |
| **FEDERAL BUREAU** | ) | |
| **OF INVESTIGATION, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## JOINT STATUS REPORT

In this Freedom of Information Act (FOIA) case, the Court has ordered the FBI to reprocess roughly 60,000 pages of responsive documents and submit a <u>Vaughn</u> Index of a sample selected by the Plaintiff. <u>See</u> ECF No. 99, Mem Opin at 15. The parties agreed to submit a joint status report roughly every two months outlining the progress with the production of responsive documents and a schedule for the FBI's submission of a <u>Vaughn</u> Index and any subsequent filing of dispositive motions.

The FBI anticipated processing approximately 5,000 pages per month with rolling releases each month starting in June 2012 and anticipated complete production by June 2013.[1] The FBI is on schedule with its anticipated production. The FBI most recently released documents in July of 2012. The parties will continue to file a status report every two months until the FBI completes its reprocessing of the roughly 60,000 responsive pages.

The Plaintiff will then select a sample of no more than 400 pages after the FBI's processing of the first 10,000 pages. The FBI will file a <u>Vaughn</u> Index based on the sample

---

[1]d    To clarify, the FBI will not release 5,000 pages per month but process this amount and each month release non-exempt portions.

within 60 days.  The Plaintiff will evaluate the <u>Vaughn</u> Index and determine if there is still a need

for further litigation.  The parties will then file a status report with a proposed briefing schedule.

Dated:  August 1, 2012                      Respectfully submitted,

| | |
|---|---|
| /s/ _____<br>JAMES H. LESAR<br>D.C. Bar # 114413<br>1003 K Street, N.W.<br>Suite 640<br>Washington, D.C.  20001<br><br>Counsel for Plaintiffs | RONALD C. MACHEN JR.<br>D.C. Bar #447889<br>United States Attorney<br><br>DANIEL F.  VAN HORN<br>D.C. Bar # 924092<br>Acting Chief, Civil Division<br><br>/s/ _____<br>ANDREA McBARNETTE<br>D.C. Bar  # 483789<br>Assistant United States Attorney<br>555 Fourth Street,  N.W.<br>Washington, D.C. 20530<br>(202) 514-7153<br>Andrea.McBarnette@usdoj.gov<br><br>Counsel for Defendant |

# EXHIBIT 11

SOMNATH RAJ CHATTERJEE (CA SBN 177019)
SChatterjee@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California 94105
Telephone: 415.268.7000 / Facsimile: 415.268.7200

KATHERINE NOLAN-STEVAUX (CA SBN 244950)
KNolanStevaux@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600 / Facsimile: 650.494.0792
Attorneys for Plaintiffs

[Additional Counsel on Signature Page]

IAN HEATH GERSHENGORN
Assistant Attorney General
JOHN R. TYLER
Assistant Branch Director
TAMARA ULRICH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:     (202) 305-1432
Fax:           (202) 616-8470
Email: Tamara.Ulrich@usdoj.gov

Attorneys for Defendants

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| THE AMERICAN CIVIL LIBERTIES UNION OF NORTHERN CALIFORNIA, ASIAN LAW CAUCUS, SAN FRANCISCO BAY GUARDIAN<br><br>Plaintiffs,<br><br>v.<br><br>FEDERAL BUREAU OF INVESTIGATION, DEPARTMENT OF JUSTICE,<br><br>Defendants. | Case No.        3:10-cv-03759-RS<br><br>**JOINT STIPULATION REGARDING DOCUMENT PRODUCTION SCHEDULE**<br><br>Judge:  Hon. Magistrate Judge Laurel Beeler |

The parties to this action, through their attorneys of record listed below, hereby stipulate as follows:

WHEREAS the parties conferred with Magistrate Judge Laurel Beeler on April 4, 2011 as ordered by Judge Richard Seeborg to address their disputes regarding the production of documents in response to the expedited March 9, 2010 Request and the non-expedited July 27, 2011 FOIA Request (which was added to this case on February 11, 2011);

WHEREAS the defendants have thus far identified approximately 35,000 pages of potentially responsive documents to the FOIA Requests;

WHEREAS the defendants have processed a total of 3,835 pages in response to both FOIA Requests;

WHEREAS Magistrate Judge Beeler, pursuant to Local Rule 72-1, agreed to issue an Order pursuant to a stipulation detailing the schedule and procedure for further document processing and production in this action;

IT IS HEREBY AGREED AND STIPULATED THAT:

1.      The defendants shall complete production of documents responsive to the March 9th and July 27th FOIA Requests, subject to any claimed exemptions, within eight months of the date of this order, absent a further order from the Court.

2.      The defendants produce the responsive information, subject to any claimed exemptions, to plaintiffs' requests for aggregate data as defined in the March 9, 2010 FOIA Request at subheading I. (3) (at Pages 3-4) within thirty days of the date of this order or state in writing that there are no documents responsive to that portion of Plaintiffs' request.

3.      The FBI shall initially review and process all FBI generated documents as defined in the March 9, 2010 FOIA Request at subheading I. (1) a, b, d, e, and h (at Pages 2-3) within thirty days of this order.  The FBI will complete further review and the defendants will produce responsive documents, subject to any claimed exemptions, to this portion of the request within two weeks thereafter.

4.      The defendants shall review and process the remaining requests in the March 9, 2010 and July 27, 2010 FOIA Requests at a rate of 2,500 pages per month or more and in a

manner sufficient to meet the eight month deadline as set forth in Paragraph 1 above.  With regard to remaining requests, the defendants' processing and production of information shall be prioritized as follows: FBI generated documents regarding domain management, assessments, and investigations as described in the March 9, 2010 FOIA Request at subheading I. (2) a and c (at Page 2) shall be prioritized over the remaining materials in the FOIA requests; responsive documents not generated by the FBI as well as the Virtual Academy online training courses shall be given secondary priority, including textbook-related materials not generated by the FBI.  The defendants shall produce to the plaintiffs a list of the Virtual Academy online courses identified by the defendants as responsive and the plaintiffs will promptly let the defendants know what course materials they would like the defendants to process.  With respect to the Virtual Academy online courses, the defendants will be obligated to process only the material from those courses identified by the plaintiffs.

5.     The defendants shall provide status reports with each document production detailing how many processors are working on the request, how many pages are in the processing system and, for each of the work folders in the processing system, at what stage the work folders are within in the processing system.

6.     To address document processing and production issues, the parties shall telephonically participate in status conferences regarding the pace and content of document production at least every sixty days with the Court, Magistrate Judge Beeler presiding, as scheduled by the Court.  The parties will address the production of a *Vaughn* Index*,* a search affidavit, and other issues in this action during subsequent status conferences.

7.     Any party may seek review of any subsequent order by the Magistrate Judge under Local Rule 72-2.

1

2

Dated: April 13, 2011

3

4

By: _/s/ Tamara Ulrich_

TAMARA ULRICH

By: _/s/ Somnath Raj Chatterjee_

SOMNATH RAJ CHATTERJEE

5

6

7

8

9

10

11

12

13

14

IAN HEATH GERSHENGORN
Assistant Attorney General
JOHN R. TYLER
Assistant Branch Director
TAMARA ULRICH
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, NW
Washington, D.C. 20530
Telephone:     (202) 305-1432
Fax:              (202) 616-8470
Email: Tamara.Ulrich@usdoj.gov

Attorneys for Defendants
FEDERAL BUREAU OF
INVESTIGATIONS, DEPARTMENT OF
JUSTICE

SOMNATH RAJ CHATTERJEE (CA SBN
177019)
SChatterjee@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Telephone: 415.268.7000 / Facsimile:
415.268.7200

KATHERINE NOLAN-STEVAUX (CA
SBN 244950)
KNolanStevaux@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600 / Facsimile:
650.494.0792

15

16

17

JULIA HARUMI MASS (CA SBN 189649)
JMass@aclunc.org
ACLU FOUNDATION OF NORTHERN
CALIFORNIA
39 Drumm Street
San Francisco, California 94111
Telephone: 415.621.2493 / Facsimile:
415.255.8437

18

19

20

21

VEENA B. DUBAL (CA SBN 249268)
VeenaD@asianlawcaucus.org
ASIAN LAW CAUCUS
55 Columbus Avenue
San Francisco, California 94111
Telephone: 415.896.1701 / Facsimile:
415.896.1702

22

23

24

Attorneys for Plaintiffs
THE AMERICAN CIVIL LIBERTIES
UNION OF NORTHEN CALIFORNIA,
ASIAN LAW CAUCUS, AND THE SAN
FRANCISCO BAY GUARDIAN

25

26

27

28

**ATTESTATION OF E-FILED SIGNATURE**

I, Katherine Nolan-Stevaux, am the ECF User whose ID and Password are being used to file this Joint Stipulation Regarding Amended Complaint. In compliance with General Order 45, X.B., I hereby attest that Somnath Raj Chatterjee and Tamara Ulrich have concurred in this filing.

Dated: April 13, 2011                          By: */s/ Katherine Nolan-Stevaux*

1                                     **[PROPOSED] ORDER**

2      Having reviewed the parties' joint stipulation,

3

4      It is so ORDERED this ___ day of _____, 2011.

5

6                                                  _____

7                                    The Honorable Laurel Beeler
                                     United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT 12

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X

NATIONAL DAY LABORER ORGANIZING
NETWORK, CENTER FOR CONSTITUTIONAL
RIGHTS, and IMMIGRATION JUSTICE
CLINIC OF THE BENJAMIN N. CARDOZO
SCHOOL OF LAW,

                          *Plaintiffs,*

                 v.

UNITED STATES IMMIGRATION
AND CUSTOMS ENFORCEMENT AGENCY,
UNITED STATES DEPARTMENT OF
HOMELAND SECURITY,
FEDERAL BUREAU OF INVESTIGATION, and
EXECUTIVE OFFICE FOR IMMIGRATION
REVIEW,

                          *Defendants.*

-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/29/11

**ECF CASE**

10-CV-3488 (SAS)(KNF)

**ORDER**

## ORDER

WHEREAS Defendants Department of Homeland Security (DHS), Immigration and Customs Enforcement (ICE), Federal Bureau of Investigation (FBI) and the Executive Office for Immigration Review (EOIR) (collectively "FPL Defendants") and the National Day Laborer Organizing Network, Center for Constitutional Rights, and Immigration Justice Clinic of the Benjamin N. Cardozo School of Law (collectively "Plaintiffs") entered into an agreed upon Final Production List Stipulation ("FPL Stipulation") on July 12, 2011;

WHEREAS the FPL Defendants and Plaintiffs met and conferred regarding a schedule for production of records pursuant to the FPL Stipulation;

1

WHEREAS the Court considered arguments by FPL Defendants and Plaintiffs regarding the schedule for production of records pursuant to the FPL Stipulation ("FPL Records");

It is hereby ORDERED:

1. DHS shall produce responsive FPL Records in accordance with the following schedule:

   a. Initial production no later than July 29, 2011;

   b. 1,500 pages no later than August 12th;

   c. 1,500 pages no later than August 26th;

   d. All remaining pages no later than September 19th.

2. FBI shall produce responsive FPL Records in accordance with the following schedule:

   a. Initial production no later than July 29th;

   b. 5,000 pages no later than August 12th;

   c. 5,000 pages no later than August 26th;

   d. 5,000 pages no later than September 9th;

   e. All remaining pages no later than September 12th.

3. ICE shall produce 5,000 pages of responsive FPL Records no later than August 15th.

SO ORDERED:

HON. SHIRA A. SCHEINDLIN
United States District Judge

Dated: New York, New York
July 29, 2011

2

# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| RYAN NOAH SHAPIRO, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES <br> DEPARTMENT OF JUSTICE, <br><br> Defendant. | Civil Action No. 12-313 (BAH) <br><br> Judge Beryl A. Howell |

## <u>MEMORANDUM OPINION AND ORDER</u>

The plaintiff, Ryan Noah Shapiro is among the most prolific requesters of materials from the defendant, the United States Department of Justice, under the Freedom of Information Act, 5 U.S.C. §§ 552 *et seq*. *See* Def.'s Mem. Supp. Def.'s Mot. for Open Am. Stay ("Def.'s Mem.") at 3, ECF No. 17. As of 2013, the plaintiff had filed "approximately 600 FOIA and Privacy Act requests" with the FBI, a component of the defendant, eighty-one of which, pertaining to "animal rights extremism," are at issue in the instant suit. *See* Def.'s Combined Reply to Pl.'s and Amicus' Opp'n to Def.'s Mot. for Open Am. Stay ("Def.'s Reply") at 5, ECF No. 49. The defendant has identified at least 375,000 pages of responsive records to the plaintiff's eighty-one requests, of which five percent, or nearly 20,000 pages are believed to "require classification review." *Id.* In light of this deluge of requests, the defendant seeks a stay until September 30, 2019, under 5 U.S.C. § 552(a)(6)(C), also known as an *Open America* stay, to provide it with the necessary time to review the records the plaintiff requests. *See* Def.'s Mot. for Open Am. Stay ("Def.'s Mot.") at 1, ECF No. 17.

The plaintiff's requests generally refer to "64 inter-related individuals, organizations, incidents, and/or publications related to animal rights extremism." Def.'s Mot. Ex. A (Second

1

Decl. of David M. Hardy, Section Chief, Record/Information Dissemination Section, Records

Management Division, FBI ("2d Hardy Decl.") ¶ 33, ECF No. 17-1.  Since these requests all

relate to one of the FBI's domestic terrorism priorities, before the hundreds of thousands of

pages of records requested by the plaintiff can be released, they must be reviewed for any

possible "mosaic effect."  *See id.* ¶ 35.  This effect, recognized by the Supreme Court and the

D.C. Circuit, concerns potential wrongdoers' attempts to use "bits and pieces of data [that] may

aid in piecing together bits of other information[,] even when the individual piece is not of

obvious importance in itself[,]" in order to establish a larger picture of classified or sensitive

information.  *See CIA v. Sims*, 471 U.S. 159, 178 (1985); *Center for Nat'l Sec. Studies v. U.S.

Dep't of Justice*, 331 F.3d 918, 928–29 (D.C. Cir. 2003).

The plaintiff's FOIA requests are therefore unusually voluminous, complicated, and

interconnected.  Moreover, the requests implicate the national security priorities of the United

States, *see* 2d Hardy Decl. ¶ 35,particularly pertaining to domestic terrorism, under which

circumstances "the judiciary is in an extremely poor position to second-guess the executive's

judgment,"  *Center for Nat'l Sec. Studies*, 331 F.3d at 928.  The FOIA explicitly contemplates a

mechanism for federal agencies to respond to such gigantic requests, empowering a court to

"retain jurisdiction and allow the agency additional time" to respond in "exceptional

circumstances," provided the agency is showing "due diligence in responding to the request."  5

U.S.C. § 552(a)(6)(C)(i); *see Open America v. Watergate Special Prosecution Force*, 547 F.2d

605, 610–11 (D.C. Cir. 1976) ("Subparagraph (C) obviously contemplates . . . that the agency

will have found it impossible to respond to a request within the time limits specified, even with

all due diligence"); *Citizens for Responsibility and Ethics in Washington v. Fed. Election

Comm'n*, 711 F.3d 180, 189 (D.C. Cir. 2013) ("The unusual circumstances and exceptional

circumstances provisions allow agencies to deal with broad, time-consuming requests (or justifiable agency backlogs) and to take longer than 20 working days to do so.").

Here, the defendant has shown both exceptional circumstances and due diligence.  The massive scope and scale of the plaintiff's requests, which comprised, at one point, six-to-seven percent "of the FBI's monthly intake" of FOIA requests from all requesters, worldwide, constitutes such exceptional circumstances.  While the FOIA excludes "delay[s] that result[] from a predictable agency workload of requests" from the type of "exceptional circumstances" warranting an *Open America* stay, 5 U.S.C. § 552(a)(6)(C)(ii), the FBI could not reasonably have planned for a single citizen to consume such a vast quantity of the agency's FOIA resources. The agency's declarant asserts that it is "considering and implementing procedures and processes to more efficiently address workload issues," 2d Hardy Decl. ¶ 29, and, as the plaintiff points out, has advertised for another full-time FOIA processor since the recent government hiring freeze ended, *see* Pl.'s Notice at 2, ECF No. 60.  These circumstances, combined with this Circuit's admonition that it is "unwise to undertake searching judicial review," when predictions of harm to national security are implicated, *Pub. Emps. for Envtl. Responsibility v. Int'l Boundary and Water Com'n.*, 740 F.3d 195, 205–06 (D.C. Cir. 2014), militate strongly in favor of granting the stay requested by the defendant.

Accordingly, upon consideration of the defendant's Motion for *Open America* Stay, the legal memoranda in support and opposition thereto, the declarations and exhibits, both public and *ex parte*, filed therewith, and the entire record in this case, it is hereby

**ORDERED** that the defendants' Motion for *Open America* Stay, ECF No. 17, is GRANTED in part and DENIED in part; and it is further

**ORDERED** that the defendant's motion is GRANTED insofar as it requests an *Open America* stay under 5 U.S.C. § 552(a)(6)(C), and it is DENIED insofar as it requests that this matter be stayed until September 30, 2019; and it is further

**ORDERED** that this case is STAYED until September 30, 2017; and it is further

**ORDERED** that the defendant shall file a status report apprising the Court and the plaintiff of the defendant's progress in the processing of the plaintiff's FOIA requests on February 9, 2015 and every ninety days thereafter until September 30, 2017, on which date the defendant shall file a status report with the Court stating whether the stay should be continued and, if so, until what date.

 

**SO ORDERED.**

 

Date: December 8, 2014

 

_____

BERYL A. HOWELL
United States District Judge

4

# EXHIBIT 14

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ELECTRONIC PRIVACY INFORMATION CENTER, | ) ) ) |  |
| Plaintiff, | ) ) ) |  |
| v. | ) ) ) | Civil Action No. 12-CV-00667-CKK |
| FEDERAL BUREAU OF INVESTIGATION, | ) ) ) |  |
| Defendant. | ) ) ) |  |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to joining the FBI, from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the state of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 270 employees who staff a total of ten (10) units and two field operational service center units whose

(13)  RIDS has an obligation to faithfully administer the FOIA program in accordance with statutes and regulations, and by treating all requesters fairly and equitable, giving none an undue advantage over any others.  RIDS follows the rule of "first in-first out" using a multi-track queue system.  *See* First Hardy Declaration, ¶¶ 14 (a)(I) - (II).  Exceptions to the "first in-first out" rule are made by RIDS in rare circumstances: for those requesters who are granted expedited processing by either the FBI or DOJ in accordance with DOJ FOIA regulations for expedited processing;[10] and for those requesters who initiate litigation and in which a court orders (or the parties agree to) priority processing and release by imposing a framework of expedited production deadlines.  Another policy designed to ensure fairness among requesters involves the "behemoths" requests.  Because RIDS has determined that no requester should have to wait more than three years before the FBI provides a complete response, it will continue to commit the necessary resources to accomplish that goal.  This is a goal that RIDS is continually striving to achieve.

(14)  Finally, I would like to provide an update with regard to the upgrade of FDPS which was discussed in my last declaration.  Although RIDS has commenced preliminary work and will continue over the next several weeks, including additional programming, technical work, and testing, RIDS now anticipates that the implementation of the upgraded version of FDPS will begin in mid-September and conclude in mid-October.

---

reviews that folder, the FOIPA analyst must work on another work folder until classification review is completed.

[10]  In the instant case, RIDS did not administratively grant plaintiff's request for expedited processing because plaintiff failed to establish its eligibility under the applicable DOJ FOIA regulations.

EXHIBIT 15

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ANGELA CLEMENTE,                        )
                                        )
        Plaintiff,                      )
                                        )
    v.                                  )       Civil Action No. 13-cv-0108-JDB
                                        )
FEDERAL BUREAU OF INVESTIGATION,        )
    and                                 )
DEPARTMENT OF JUSTICE,                  )
                                        )
        Defendants.                     )
_____)

## DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section

("RIDS"), Records Management Division ("RMD"), in Winchester, Virginia. I have held this

position since August 1, 2002. Prior to joining the Federal Bureau of Investigation ("FBI"), from

May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil

Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy,

procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I

served as a Navy Judge Advocate at various commands and routinely worked with FOIA

matters. I am also an attorney who has been licensed to practice law in the State of Texas since

1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 270

employees who staff a total of ten (10) FBIHQ units and two (2) field operational service center

units whose collective mission is to effectively plan, develop, direct, and manage responses to

requests for access to FBI records and information pursuant to the FOIA, as amended by the

1

(e) *Shapiro v. DOJ*, 12-CV-0313 (DDC) - The FBI currently estimates that the number of potentially responsive pages in this litigation is approximately 375,000 pages. We further estimate that at least 5% of these pages are classified, and will require classification review. The FBI has filed an Open America motion which is pending a decision from the Court.

## PROPOSED PROCESSING SCHEDULE

(39) Due to the volume of work generally faced by RIDS with respect to administrative matters and other litigation cases, in conjunction with the complexities associated with the processing of the requests at issue in this case, the FBI is requesting thatproduction be set at 2,000 pages per month, in order to allow RIDS the time necessary to process and release all non-exempt records responsive to plaintiff's requests. The FBI further proposes to provide the Court and plaintiff status reports every 60 days that report the volume of information processed since the previous status report, and update and revise our estimates about volume of responsive information to be processed and amount of time to complete processing.

## CONCLUSION

(40) The FBI takes very seriously its responsibilities with regard to the administration of the FOIA/Privacy Act program. All reasonable efforts are being made to timely process requests that are either at the administrative stage or those that are in litigation, including plaintiff's requests. The FBI's proposal, as described above, has carefully balanced the volume and inter-relatedness of the responsive records and plaintiff's interests, while also recognizing and preserving the rights of other litigants and requesters in access to the information they seek. As detailed above, the extremely high volume of other administrative and litigation-related FOIA /Privacy Act work being handled by RIDS and the serial nature of FOIA/Privacy Act

# EXHIBIT 16

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| RYAN NOAH SHAPIRO, | ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No. 12-CV-313-BAH |
| U.S. DEPARTMENT OF JUSTICE, | ) ) | |
| Defendant. | ) ) ) | |

## SECOND DECLARATION OF DAVID M. HARDY

I, David M. Hardy, declare as follows:

(1)     I am currently the Section Chief of the Record/Information Dissemination Section ("RIDS"), Records Management Division ("RMD"), formerly at Federal Bureau of Investigation Headquarters ("FBIHQ") in Washington, D.C., and currently relocated to Winchester, Virginia. I have held this position since August 1, 2002. Prior to my joining the Federal Bureau of Investigation ("FBI"), from May 1, 2001 to July 31, 2002, I was the Assistant Judge Advocate General of the Navy for Civil Law. In that capacity, I had direct oversight of Freedom of Information Act ("FOIA") policy, procedures, appeals, and litigation for the Navy. From October 1, 1980 to April 30, 2001, I served as a Navy Judge Advocate at various commands and routinely worked with FOIA matters. I am also an attorney who has been licensed to practice law in the State of Texas since 1980.

(2)     In my official capacity as Section Chief of RIDS, I supervise approximately 274 employees who staff a total of ten (10) FBIHQ units and two field operational service center units whose collective mission is to effectively plan, develop, direct, and manage responses to

totaling an estimated 2.2 million pages of potentially responsive records that are pending assignment to a FOIPA Disclosure Unit for processing.

(29)     RIDS is continually considering and implementing procedures and processes to more efficiently address workload issues. One example of a shift in procedure designed to achieve additional efficiency is described in ¶ 7(c) *supra. – i.e.*, three FOIPA Disclosure Units have assumed "cradle to grave" responsibility for responding to FOIA and Privacy Act requests received by RIDS, to include completing initial tasks necessary to perfect requests, searching for responsive records, reviewing records, redacting exempt information and applying exemptions (other than Exemption 1/classification review), and preparing letters and records for release to requesters. This "one stop shopping" approach will allow RIDS to move FOIA and Privacy Act requests more efficiently through the various stages of processing.

(30)     Also as part of its on-going effort to continually improve its efficiency and effectiveness, RIDS is upgrading to its FOIPA Document Processing System ("FDPS"); the upgrade will add some important features that will maximize processing and improve efficiency. However, RIDS's ability to review and process material responsive to the requests in plaintiff's lawsuit, as well as other pending requests, will be impacted by this upgrade to FDPS. The upgrade is currently scheduled to take place from mid-August to mid-September 2012. The upgrade will involve installation of the next generation version of the FDPS software program. At this time, we anticipate the installation process will take approximately 30 days to complete fully, and will require a complete shutdown of the system for at least five full days, although we will have a more accurate estimate once the upgrade process begins. During this time, all FOIA work in RIDS will, of necessity, completely cease. It is also quite possible that at other times