UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NINA GILDEN SEAVEY,

        Plaintiff,

v.                               Civil Action No. 15-1303 (GK)

DEPARTMENT OF JUSTICE,

        Defendant.

## MEMORANDUM OPINION

### I.    PROCEDURAL HISTORY

On March 3, 2015, Plaintiff, Professor Nina Gilden Seavey, submitted a Freedom of Information Act ("FOIA") request to the FBI seeking records about individuals, organizations, events, publications, and file numbers relating to the FBI's role in the anti-war movement in St. Louis in the 1960s and 1970s. In that mailing, she requested a waiver of all relevant fees and to be considered as a member of the news media for search purposes. On March 23, 2015, the FBI granted her request to be considered a member of the news media, but denied her request for a fee waiver.

On April 23, 2015, Plaintiff administratively appealed to DOJ's Office of Information Policy ("OIP") the FBI's fee waiver denial. In a letter dated May 18, 2015, OIP acknowledged that it had received her appeal on April 29, 2015 and had assigned it a tracking number: AP-2015-03420. Plaintiff did not receive any further correspondence from the FBI or the OIP relating to this appeal.

On July 18, 2016, Defendant, the Department of Justice, filed a Motion for Summary Judgment in Part in order to deny Plaintiff's claim for a fee waiver [Dkt. No. 17]. Plaintiff has also filed a Cross-Motion for Partial Summary Judgment in response to Defendant's Motion [Dkt. No. 23], to which Defendant filed an Opposition and a Reply [Dkts. No. 33 & 34]. Plaintiff then filed

a Reply in Support of its Cross-Motion for Partial Summary Judgment [Dkt. No. 40]. The basic issue is Plaintiff's challenge to the Government's refusal to waive duplication fees for the work to be done on the 280 subjects included in her original and amended FOIA request. The FBI did grant Plaintiff her request for news media status, meaning that she will not be charged search fees, but denied her request of a waiver of duplication fees. Hardy Decl., ¶ 13, Ex. H.

## II. STATEMENT OF FACTS

Plaintiff, Professor Nina Gilden Seavey, is one of the very few documentary film makers who holds academic appointments in both history and film. She holds the rank of full research professor in the Department of History and the School of Media and Public Affairs at George Washington University, here in the District of Columbia.

Her counsel has done an excellent job spelling out all her professional background, namely: all of the degrees she has received, her five nominations for national Emmy Awards, one of which she was awarded, as well as other prizes; commissions from the Smithsonian Institution and the National Park Service, as well as grants from the National Endowment for the Humanities, the National Endowment for the Arts, and the Corporation for Public Broadcasting, the many letters of support she has received from her peers for this project; and numerous other awards she has received over time [Dkt. No. 23 at 2-3].

Professor Seavey has, for an extended period of time, been working on a project designed to explain the role played by the United States Government's intelligence and law enforcement agencies in the anti-war movement against our participation in Vietnam, in St. Louis, Missouri, in the 1960s and 1970s. She has worked on her project, a feature length documentary file titled *My Fugitive*, for decades, and is giving particular emphasis to the role the FBI played during this period

of time. Once again, her lawyer has done an excellent job setting forth in great detail what and how Professor Seavey hopes to explain these issues to the public, and the impact of dissent at that time, as it is specifically related to St. Louis, Missouri, and Washington University in St. Louis [Dkt. No. 23 at 45].

## III. LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party seeking summary judgment must demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

FOIA provides that "Documents shall be furnished without charge . . . if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). What is more, Department of Justice regulations similarly provide that "Records responsive to a request shall be furnished without charge or at a reduced rate . . . where a component determines, based on all available information, that the requester has demonstrated that: (i) Disclosure of the requested information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government, and (ii) Disclosure of the information is not primarily in the commercial interest of the requester." 28 C.F.R. § 16.10(k)(1). The regulation provides four factors for a component to consider in evaluating a fee waiver request:

(i) The subject of the request must concern identifiable operations or activities of the Federal Government, with a connection that is direct and clear, not remote or attenuated.

(ii) Disclosure of the requested records must be meaningfully informative about government operations or activities in order to be "likely to contribute" to an increased public understanding of those operations or activities. The disclosure of information that already is in the public domain, in either the same or a substantially identical form, would not contribute to such understanding where nothing new would be added to the public's understanding.

(iii) The disclosure must contribute to the understanding of a reasonably broad audience of persons interested in the subject, as opposed to the individual understanding of the requester. A requester's expertise in the subject area as well as the requester's ability and intention to effectively convey information to the public shall be considered. It shall be presumed that a representative of the news media will satisfy this consideration.

(iv) The public's understanding of the subject in question must be enhanced by the disclosure to a significant extent. However, components shall not make value judgments about whether the information at issue is "important enough to be made public."

28 C.F.R. § 16.10(k)(2).

District courts are to conduct a *de novo* review of an agency's denial of a fee waiver request based upon the record that was before the agency. Judicial Watch v. Rossotti, 326 F.3d 1309, 1311 (D.C. Cir. 2003).

## IV. ARGUMENT

### A. Failure to File a Timely Appeal

The Government withdrew this argument and conceded that Plaintiff filed an appeal in a timely fashion. Opp'n at 2 [Dkt. No. 33]

## B. Is Disclosure in the Public Interest?

Defendant has already conceded that disclosure of the requested information is not primarily in the Plaintiff's commercial interest. Only the fourth factor, namely 28 C.F.R. § 16.10(k)(2)(iv), is relevant because the FBI's fee waiver denial letter claims that the only consideration is whether Plaintiff met the standard that her request would enhance public understanding of the requested information to a significant extent. Hardy Decl. Ex. H.

From the late 1960s into the early 1970s, the FBI conducted the COINTELPRO Program, in which Plaintiff contends that the FBI unlawfully surveilled, infiltrated, and disrupted civil rights anti-war, and other American dissident political movements. Numerous well known individuals, such as Reverend Martin Luther King, Jr. and Mohammed Ali, were affected by the Government's activities. The COINTELPRO Program was officially closed down in the early 1970s. According to Plaintiff, the FBI continued aggressive investigation of the same or similar sorts of political dissent groups including aggressive national security oriented investigations of individuals, organizations, and elected political officials who sought to achieve racial justice. Hardy Decl. Ex. G at 31.

While there has been a significant amount of historical and journalistic attention to FBI campaigns against domestic left-wing political dissenters during the activities of COINTELPRO, and into the 1970s, 1980s, and 1990s, scholars and journalists have focused on the major group locations from which the student movement grew. Hardy Decl. Ex. G at 31.

Professor Seavey's project plans to "shed significant light on these serious gaps in the public's understanding of the role of the FBI and the U.S. Government more broadly in the policing, surveilling and at times suppression of anti-war social justice activism and left-wing political dissent,

in a place [such as St. Louis], where no one thought [there] would be such a crucible of a struggle between the students and the government." Hardy Decl. Ex. G at 31; Dkt. No. 23 at 14.

Professor Seavey believes that there are still many questions which need to be answered about the historical record of that era: "[t]he local focus of Plaintiff's project will illuminate the operations of Government with broader impact on how national federal law enforcement policies and actions coalesce with law enforcement activities and cultural differences that are quite distinct from one region to another." Dkt. 23 at 15.

Professor Seavey believes that there are no other "local histories," especially from the Midwest, that document the distinct experience of student activists and their interactions with local and federal law enforcement as they challenged the status quo and protested against our involvement in the Vietnam War. Hardy Decl. Ex. G at 28. She believes that her project will create a nexus between the local law enforcement activities and cultural differences which has never before been explored in this manner, and will be a critical tool for understanding an important piece of our social and regional American history. Dkt. No. 23 Ex. 1.

For these reasons, Plaintiff seeks and believes she is entitled to a fee waiver that covers her entire FOIA request. Fortunately, Plaintiff has agreed to withdraw her request for a fee waiver as to aspects of her FOIA request that sought records by file number. In addition, the FBI has concluded that it does not possess any responsive records with respect to a large number of subparts included in Plaintiff's initial and amended request. Consequently, as of October 17, 2016, in Dkt. No. 40 at p. 3, the Parties have been able to come to a position where "a little under 250 subparts are no longer at issue." See Ex. 1 for a list. If the Court is doing her math properly, the Parties, as of

October 17, 2016, have been able to reach agreement that only approximately 30 of the former 280 subparts need to be processed.[1]

As to the fourth requirement, namely, whether the disclosures would enhance the public understanding, it is clear to the Court that Professor Seavey certainly meets that requirement. She has presented a clear and totally persuasive argument that the materials she seeks will enable her to present to the public the distinct experience of student activists and their interactions with the local law enforcement bodies," and, therefore, disclosure of the requested information is in the public interest because it is likely to significantly enhance public understanding of the operations and/or activities of the government. 28 C.F.R. § 16.10(k)(2)(iv).

The fact that some undisclosed records may contain information that is repetitive to what is already public, does not undermine her entitlement to a fee waiver. As the District of Columbia Circuit has explained in Campbell v. U.S. Dep't of Justice, 164 F.3d 20, 36 (D.C. Cir. 1998), "an agency may not deny a fee waiver simply by arguing that the requested documents contain 'substantially the same information' as other documents." Moreover, in Campbell, the court emphasized that "the mere fact that materials are in the public domain does not justify denying a fee waiver; only material that has met the threshold level of public dissemination will not further 'public understanding' within the meaning of the fee waiver provision." Id. The FBI has not shown this level of public dissemination.

---

[1] Plaintiff, however, has indicated that if she is "seeking the same records through different subparts of her request (i.e., requesting a file both by its file number and also by the name of the subject), Plaintiff does intend to withdraw that portion of her request that seeks the records by the subject name." Dkt. No. 40, n. 2.

"The basic purpose of the Freedom of Information Act [is] to open agency action to the light of public scrutiny" thereby furthering "the citizens' right to be informed about 'what their government is up to.'" DOJ v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 773 (1989). At this present difficult time in our country's history, it is important as never before, that the American public be as educated as possible as to what "our Government is up to."

For all these reasons, the Court concludes that Defendant's Motion for Summary Judgment in Part [Dkt. No. 17] is **denied**; and Plaintiff's Cross-Motion for Partial Summary Judgment [Dkt. No. 23] is **granted**.

May 16, 2017

/s/ Gladys Kessler
Gladys Kessler
United States District Judge

**Copies via ECF to all counsel of record**