## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

NINA GILDEN SEAVEY,                          :
                                             :
        Plaintiff,                           :
                                             :
    v.                                       :        **Civil Action No. 15-1303**
                                             :
DEPARTMENT OF JUSTICE, *et al.*,             :
                                             :
        Defendants.                          :

## MEMORANDUM OPINION

### I.    BACKGROUND

#### A. Factual Background

Plaintiff, Professor Nina Gilden Seavey, is a documentary film maker and academic. She

holds the rank of full research professor in the Department of History and the School of Media and

Public Affairs at George Washington University, here in the District of Columbia. Professor

Seavey has, for an extended period of time, been working on a project designed to explain the role

played by the United States Government's intelligence and law enforcement agencies in the

movement against our participation in the Vietnam War, focusing on the St. Louis, Missouri, area.

She has worked on her project—a feature length documentary titled *My Fugitive*—for decades,

and is giving particular emphasis to the role played by the FBI.

In conducting research for her film, Professor Seavey submitted numerous Freedom of

Information Act ("FOIA") requests to the FBI beginning in 2013.[1] Her requests sought records

about individuals, organizations, events, publications, and file numbers relating to the FBI's role

---

[1] Professor Seavey also submitted FOIA requests to CIA and NARA, and included them as
Defendants in her Amended Complaint. Amended Complaint at ¶¶ 62-78 [Dkt. No. 7]. However,
both were voluntarily dismissed. See [Dkt. Nos. 35 & 57].

in the anti-war movement in St. Louis in the 1960s and 1970s.  Most relevant here, on March 3, 2015, Professor Seavey submitted a particularly large FOIA request for records to pertaining to hundreds of such individuals, organizations, etc.  Amended Complaint, Ex. G [Dkt. No. 7-1] ("March 3 FOIA Request").

On March 23, 2015, the FBI sent a letter to Professor Seavey acknowledging receipt of the March 3 FOIA Request.  Def.'s Motion for Summary Judgment in Part, Hardy Decl. Exhibits, Ex. H ("March 23 Letter") [Dkt. No. 17-2].  The letter informed Professor Seavey that she had been granted news media status and denied her request for a fee waiver.  Id.  It also determined that "unusual circumstances" applied to the processing of the March 3 FOIA Request, which therefore would delay the FBI from making a "determination" on her request.  Id.  On April 21, 2015, Professor Seavey sent a letter amending and updating her March 3 FOIA Request.  It appears that the FBI did little further to respond to the March 3 FOIA Request, other than to assign tracking numbers to the various subjects of the Request.  See Amended Complaint ¶¶ 34-37.

## B.  Procedural Background

Given this lack of action by the FBI, Professor Seavey filed suit on August 12, 2015.  See Complaint [Dkt. No. 1].  The case was stayed from November 19, 2015, until July 21, 2016, pursuant to a joint motion by the parties.  See Order Granting the Joint Motion to Stay [Dkt. No. 10] and Order [Dkt. No. 20].  While the case was stayed, the FBI produced documents responsive to a small number of subjects contained in the March 3 FOIA Request.

After the stay was lifted, Professor Seavey filed her Motion for Partial Summary Judgment, arguing that the FBI had violated FOIA—by failing to make a determination on her March 3 FOIA Request within the required statutory timeframe—and that the FBI should be ordered to process

5,000 pages per month until her Request was complete. The FBI filed an Opposition, arguing that it should only be required to process 500 pages per month, consistent with its internal policies for processing FOIA requests. [Dkt. No. 45]. Professor Seavey has filed a Reply, and the Motion is ripe. [Dkt. No. 49].

Subsequently, the FBI filed a Status Report updating the Court on its progress in responding to Professor Seavey's March 3 FOIA Request. [Dkt. No. 61]. The Status Report indicated that the FBI had processed 7,574 pages of responsive records as of May 31, 2017. Id. Additionally, the FBI had identified approximately 151,500 pages of potentially responsive records which it has yet to process. Id. On June 8, 2017, the parties filed a motion asking that the case be held in abeyance to allow the parties to discuss settlement of the Motion for Partial Summary Judgment, [Dkt. No. 62], which the Court granted, Order [Dkt. No. 63]. Then, on July 14, 2017, the parties filed a Joint Status Report, indicating that the parties had made significant progress in reducing the number of pages of potentially responsive documents the FBI would need to process. Supplemental Joint Status Report [Dkt. No. 65]. Rather than 151,500 potentially responsive pages, there are now only 102,385 pages that need to be processed. Id.

Unfortunately, the parties have not been able to reach any sort of understanding as to the rate at which the FBI is to process these pages. The FBI continues to propose that processing occur at a rate of 500 pages per month, while Professor Seavey continues to propose that processing occur at a rate of 5,000 pages per month. Based on the current estimate of 102,385 pages, the FBI's proposal would result in the completion of processing in approximately 201 months, while Professor Seavey's proposal would result in the completion of processing in approximately 21 months.

## II.    ANALYSIS

### A. FOIA Framework

Once an individual makes a FOIA request, "an agency usually has 20 working days to make a 'determination'" as to the request. Citizens for Resp. and Ethics in Washington v. Fed. Election Commn., 711 F.3d 180, 189 (D.C. Cir. 2013) ("CREW") (citing 5 U.S.C. § 552(a)(6)(A)(i)). "[I]n order to make [this] 'determination' . . . the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse." CREW, 711 F.3d at 188. "An agency can extend that 20–working–day timeline to 30 working days if unusual circumstances delay the agency's ability to search for, collect, examine, and consult about the responsive documents." Id. (citing 5 U.S.C. § 552(a)(6)(B)) (emphasis added).

However, "a 'determination' does not require actual *production* of the records to the requester at the exact same time that the 'determination' is communicated to the requester. Under the statutory scheme, a distinction exists between a "determination" and subsequent production." CREW, 711 F.3d at 188. Once a determination is made, "FOIA requires that the agency make the records 'promptly available.'"  Id.  Accordingly, the agency has "some additional time to physically redact, duplicate, or assemble for production the documents that it has already gathered and decided to produce." Id. at 189.  Exactly how much time is context dependent, but the D.C. Circuit has indicated that it would "typically" be "within days or a few weeks of a 'determination,' not months or years." Id.

If the agency fails to make the determination within the statutory timeframe (within 20 working days, or 30 working days in unusual circumstances), the requestor may sue to enforce compliance with the statute. See 5 U.S.C. § 552(a) (6)(C); CREW, 711 F.3d at 188-89; Daily Caller v. U.S. Dept. of State, 152 F. Supp. 3d 1, 10 (D.D.C. 2015) (failure to meet statutory deadline to make a determination "serves primarily as a means to obtain immediate judicial supervision over an agency's response to an outstanding FOIA request."). The Court then has the authority to oversee and supervise the agency's progress in responding to the request. CREW, 711 F.3d at 189; Clemente v. Fed. Bureau of Investigation, 71 F. Supp. 3d 262, 269 (D.D.C. 2014) (a court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline."); Elec. Priv. Info. Ctr. v. Dept. of Justice, 416 F. Supp. 2d 30, 37–38 (D.D.C. 2006) ("FOIA, as amended, envisions the courts playing an important role in guaranteeing that agencies comply with its terms.").

"[O]nce in court, an agency may further extend its response time by means of the 'exceptional circumstances' safety valve. That provision says that if exceptional circumstances exist and an agency 'is exercising due diligence in responding to the request,' a court may grant the agency 'additional time to *complete its review* of the records.'" CREW, 711 F.3d at 188 (quoting 5 U.S.C. § 552(a)(6)(C)(i)).

## B. Failure to Make Determination

Professor Seavey has moved for summary judgment. Though the filings of both parties are less than clear, it appears she seeks a judgment on her claim that the FBI failed to make a timely determination on her request. See Reply at 1-2.

Under the familiar summary judgment standard of Rule 56, summary judgment may be granted only if the pleadings, the discovery materials, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; see Arrington v. United States, 473 F.3d 329, 333 (D.C. Cir. 2006).

The Amended Complaint and the evidentiary submissions of the parties demonstrate that the FBI failed to make a timely determination on the March 3 FOIA Request. After receiving the March 3 FOIA Request, the FBI sent a letter acknowledging receipt of the Request and invoking the "unusual circumstances" exception, giving it a total of 30 working days to make a "determination." It did not complete the three requisite steps to make a determination within 30 working days of March 3, 2015: (1) gathering and reviewing the documents; (2) determining and communicating the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (3) informing the requester that it can appeal whatever portion of the 'determination' is adverse. See CREW, 711 F.3d at 188. Even as of today, some two years after the request was made, the FBI has not completed these steps.

Indeed, the FBI's Opposition does not devote a single sentence to arguing that it timely made the "determination" as required by FOIA. Instead, the FBI's Opposition is devoted solely to arguing what the appropriate remedy is for this violation of the statute.

As the submissions of the parties demonstrate that there is no genuine issue of material fact as to whether the FBI failed to timely make a determination on the March 3 FOIA Request, Professor Seavey is entitled to summary judgment.

## C. Remedy

In light of the FBI's failure to comply with FOIA, the sole remaining question is what remedy Professor Seavey is entitled to. This Court "may use its equitable powers to require the agency to process documents according to a court-imposed timeline." Clemente, 71 F. Supp. 3d at 269. In devising a remedy the Court is mindful that "unreasonable delays in disclosing non-exempt documents violate the intent and purpose of the FOIA, and the courts have a duty to prevent [such] abuses." Id.

The FBI requests that the Court stick to the status quo. The FBI has an established policy for how it processes FOIA requests, which it is following to process Professor Seavey's request. Opposition at 4. Under this policy, the FBI assigns requests to various "queues" based on the number of pages of potentially responsive documents. Id. Requests, such as Professor Seavey's, that seek access to more than 2,500 pages are placed in the "large" queue and are processed at a rate of 500 pages per month. Id. Consistent with this policy, the FBI is currently processing Professor Seavey's request at 500 pages per month and asks that it not be ordered to process pages at a faster rate. If the FBI's request is granted, it will take just shy of 17 years to complete the processing of Professor Seavey's request. In contrast, Professor Seavey asks that the Court order the FBI to process 5,000 pages per month, which will result in completion of processing in less than 2 years.

The basic gist of the FBI's argument is that it has developed a comprehensive policy for handling FOIA requests that appropriately balances issues of administrative efficiency and fairness to all FOIA requestors. Thus, the FBI argues that "in terms of managing work-flow" the 500-page policy has "proven to be ideal," and that it is "key in meeting the demands posed by the growing

number, size, and complexity of FOIA/[Privacy Act] requests received by the FBI." Third Hardy Decl. ¶ 13b. Additionally, the FBI claims that the 500-page policy promotes fairness by preventing "a system where a few, large queue requests monopolize finite processing resources resulting in less pages provided to fewer requesters on a more infrequent basis." Id. ¶ 13a. Neither proffered justification is persuasive.

The FBI's administrative efficiency rationale is simply without merit. In the name of reducing its own administrative headaches, the FBI's 500-page policy ensures that larger requests are subject to an interminable delay in being completed. Under the 500-page policy, requestors must wait 1 year for every 6,000 potentially responsive documents, and those who request tens of thousands of documents may wait decades. "Telling the requester 'You'll get the documents 15, or eight, years from now' amounts as a practical matter in most cases to saying 'regardless of whether you are entitled to the documents, we will not give them to you.'" Fiduccia v. DOJ, 185 F.3d 1035, 1041 (9th Cir. 1999). Where a request imposes truly burdensome obligations on an agency, FOIA provides one safety valve—a stay for exceptional circumstances. 5 U.S.C. § 552(a)(6)(C)(i)); see CREW, 711 F.3d at 188. However, the FBI has not invoked that statutory provision in this case. The agency's desire for administrative convenience is simply not a valid justification for telling Professor Seavey that she must wait decades for the documents she needs to complete her work.

Additionally, the FBI has failed to justify its contention that processing particularly large requests, such as Professor Seavey's, at a faster pace would "monopolize" its resources and delay the processing of smaller requests. The FBI has provided some data showing the total number of annual FOIA and Privacy Act requests in recent years, the average number of documents that must

be processed per request, the total number of outstanding requests and pages that have yet to be processed, and a smattering of court ordered production schedules. See Third Hardy Decl. ¶¶ 16-23. However, this data doesn't actually shed any light on the key question: whether processing particularly large requests at a faster rate would materially slow down the processing of other requests.

If the FBI really wanted to demonstrate that processing larger FOIA requests would impact the processing of other requests there are numerous data points it could provide the Court. Relevant information includes: (1) the FBI's capacity to process FOIA and Privacy Act requests expressed as a rate – i.e. a number of pages per month; (2) the average number of pages generated by FOIA and Privacy Act requests expressed as a rate; and (3) the distribution of requested pages between queues, and, in particular, the number of pages associated with the largest requests in the large queue. Such data *might* plausibly demonstrate a gross imbalance between the FBI's processing capabilities and the size of the largest requests it receives, and thereby show that the diversion of resources to the largest requests would substantially delay the processing of smaller requests

Instead, the limited data the FBI has provided suggests exactly the opposite. The FBI claims that the average FOIA and Privacy request requires it to process 1,000 pages. Third Hardy Decl. ¶ 16. There were 22,222 requests in FY 2016. Id. ¶ 17. Together, these two figures suggests that the requests submitted in FY 2016 generated over 22 million pages for the FBI to process. At the end of FY 2016, there were roughly 5.1 million requested pages that were yet to be processed. Id. ¶ 23. Assuming that the FBI had 0 pending pages at the beginning of FY 2016, a rather charitable assumption, that suggests that the FBI is able to process at least 17 million pages per

year. To the extent that the FBI started off FY 2016 with any sort of backlog, its processing capacity would be even higher. If the FBI truly has the capacity to process 17,000,000 pages per year, it is hard to understand how a request for 100,000 pages (or even several such requests) could monopolize its workload. If that is the case, then the FBI's steadfast determination to make Professor Seavey wait decades for documents to which she is statutorily entitled is simply incomprehensible.

There are suggestions that the FBI's actual processing capacity is, in actuality, nearly an order of magnitude smaller. See Motion for Partial Summary Judgment at 14 (suggesting that the FBI is capable of processing roughly 2 million pages per year). If true, that *might* help to justify the FBI's 500-page policy. However, this possible discrepancy simply serves to highlight the fact that the FBI has not presented the relevant data that would sufficiently explain what it its capabilities are and demonstrate why asking it to do more would cause harm to other requestors. Instead, the FBI relies on unilluminating data and "anecdotal evidence [that] does not permit the Court to draw any broader conclusions about the FBI's workload." Elec. Priv. Info. Ctr. v. F.B.I., 933 F. Supp. 2d 42, 48 (D.D.C. 2013) (FBI's recitation of its production obligations in other FOIA cases failed to demonstrate that FOIA request was burdensome).

Additionally, the FBI argues that "the 500-page processing policy is consistent with security protocols that the FBI must run when dealing with classified or other sensitive information." Opp'n at 5. The need to review classified information is certainly a legitimate reason to proceed slowly and carefully. Elec. Priv. Info. Ctr., 933 F. Supp. 2d at 48-49 (noting that the amount of classified information is relevant to determining the pace at which the agency should proceed). Yet, as Professor Seavey points out, the FBI has never argued, let alone

suggested, that the documents responsive to her request are likely to contain significant amounts of classified material.

One further point highlights why the FBI's position in this case is untenable. At present, Professor Seavey's request seeks information pertaining to 372 distinct subjects. Supplemental Joint Status Report at 1. The FBI has assigned each subject a distinct FOIA tracking number, meaning that for the purpose of *internal tracking* the FBI treats each request for info on a single subject as a distinct FOIA request. Reply at 8. Yet, for the purpose of *responding* to Professor Seavey's request, the FBI treats these otherwise distinct requests as a single request and caps the rate at which it will process them at 500 pages per month. Thus, while the FBI could treat these as distinct requests, each subject to its own 500-page cap, it chooses to treat them as a single request subject to one cap, which results in a lengthier processing time. To illustrate, had Professor Seavey simply broken her initial request into 372 different letters, one for each subject, and mailed them all to the FBI on the same day, it is exceedingly likely that she would have most, if not all, of the documents she seeks.[2] Yet, because she chose to include all of the subjects in a single request letter, the FBI proposes that she wait 17 years. The Court does not believe that this kind of disparate treatment can be rationally justified

Finally, this is a project of substantial substance in terms of shedding light on "serious gaps in the public's understanding of the role of the FBI and the U.S. government . . . in the policing,

---

[2] Had she done so, each request would have been treated as a distinct request, subject to its own, individualized 500 page per month processing cap. Roughly 27 months have passed since her request was submitted, meaning that had the FBI acted promptly and diligently in responding to her request, any request seeking less than 13,500 pages would be complete by now.

surveilling, and at times suppression of anti-war, social justice activism, and left wing political dissent" where no one would have anticipated the struggle between students and the government.

Accordingly, the Court concludes that Seavey is entitled to have the FBI process her request at a significantly faster rate than the 500 pages per month proposed by the FBI. The FBI has acknowledged that it has established a policy goal that "no requestor should have to wait more than three years before the FBI provides a complete response" to a request. Third Hardy Decl. ¶ 24. At this point, it would take a herculean effort for the FBI to accomplish that goal, if the Court were to measure from the date of Professor Seavey's original request, March 3, 2015. However, it seems readily achievable to complete processing the request within three years of this decision. Given that there are roughly 102,000 pages awaiting processing, the FBI could meet the three year goal by processing 2,850 pages per month. That is well within the range of what other courts have ordered and roughly at the midpoint of what the parties requested. It also provides both parties further incentive to reduce the scope of the request.

## III.   CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment is granted. An Order will accompany this Memorandum Opinion, directing the FBI to begin processing Professor Seavey's request at a rate of not less than 2,850 pages per month.

July 20, 2017

Gladys Kessler
United States District Judge

**Copies to:** attorneys on record via ECF